**MADE JS-6**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | No. CV 08-5652-GW |
| | ) | |
| Michael T. Keys, | ) | **STATEMENT OF DECISION RE** |
| | ) | **BANKRUPTCY APPEAL** |
| Debtor. | ) | |
| | ) | |
| Charlene Van Deusen, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael T. Keys, | ) | |
| | ) | |
| Appellee. | ) | |

***In re Michael T. Keys***, Case No. CV-08-5652
    Statement of Decision re Bankruptcy Appeal


    Charlene Van Deusen ("Van Deusen" or "Appellant"), is the mother of Debtor Michael T. Keys ("Keys" or "Appellee"). Van Deusen appeals from an order from the bankruptcy court denying her objection to the claim of a homestead exemption by Keys, and granting Keys's motion to avoid Appellant's purported "equitable lien" from an earlier state court action.[1] Appellant offers two possible bases for reversing the bankruptcy court's ruling. First, she argues that the Keys did not have a "preexisting interest" in the putative homestead residence in relation to the attachment of the lien because the creation of the equitable lien occurred simultaneously with its purchase. Second, Appellant argues that avoiding the lien would result in unjust enrichment to the Appellee. Neither argument is persuasive.

**BACKGROUND**
    In 1975, Van Deusen and Roy Hargett ("Hargett"), who is identified in Appellant's papers as Keys's "stepfather," bought two adjacent unimproved one-acre residential lots in Ojai (the "Ojai Properties"). See Declaration of Charlene Van Deusen attached as Exhibit B to Opposition to Motion to Avoid Judgment Lien which is contained in the Excerpts of Record at page 283 lines 3-5 (henceforth "ER __:__"). From 1978 until 1997, Keys, Van Deusen, and

---

    [1] The lien on Keys's property - as discussed in more detail below - is not a "equitable lien" in the traditional sense, and the state trial court in the underlying action could have prevented a great deal of confusion had it avoided the use of that phrase. It is, however, obviously a "judicial lien" within the meaning of the Bankruptcy Code. A judicial lien is defined as a lien that was "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36)). In Yerrington v. Yerrington, 144 B.R. 96 (B.A.P. 9th Cir. 1992), aff'd without opinion at 19 F.3d 32 (9th Cir. 1994), the Bankruptcy Appellate Panel ("B.A.P.") affirmed the bankruptcy court's decision avoiding an equitable interest where a family law court awarded the wife an equitable interest in the family residence in order to secure payment of a note representing her portion in the equity in the residence. The B.A.P. wrote:

> [T]he federal definition of "judicial lien" must control the determination of whether [the wife's] interest is a judicial lien for bankruptcy purposes, since the Code provides a definition. [Citations]. If state law were allowed to vary what would otherwise be a judicial lien by merely calling it an equitable ownership interest, havoc would result. [Citation].
>       *      *      *      *
> [The wife] had a "judicial lien" within the meaning of [§ 101(36)] as her interest was a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. The purpose of her "equitable interest" was solely to secure payment of a $27,500.00 property settlement obligation.

Id. at 98.

-1-

Hargett lived together in a house that Hargett and Van Deusen built on one of the lots ("Lot 1" or the "Residence Property"). ER 283:7. In 1997, Keys and Hargett moved out of the Residence. ER 283:7-9. Van Deusen remained at the Residence Property, and continues to live there to this day. ER 283:9. Over time, Hargett and Van Deusen made certain improvements to the second of the two lots ("Lot 2") consisting of small unpermitted housing units which they then rented out. ER 283:10-12. Hargett and Van Deusen borrowed against the increasing equity on the Ojai Properties and used the borrowed funds mostly to purchase additional real properties. ER 283:13-14. These purchases were all made, and title to all of the properties were kept, in Keys's name. ER 283:14, 21-22.

In 1997, the parties entered into an "implied agreement" in which Van Deusen would keep the Residence Property and Hargett and Keys would keep the remaining properties,[2] using income from them to service approximately $300,000 in debt that had been taken out on the Residence Property. ER 283:26-28. In 1998, title to the Residence Property was transferred to Van Deusen. In 1998, Keys purchased property located at 1278 East Collins Street, Oxnard, CA (the "Oxnard Property"), which has been his principal residence since that time. ER 72: 6-11. In 1999, Van Deusen transferred title in the Residence Property back to Keys in order to obtain refinancing. ER 284:7-12. Keys never transferred title back to Van Deusen, although he promised to do so. ER 284:13-16.

In 2006, Keys served his mother with a 60 day notice to quit the Residence Property, which was followed by a 30 day notice. ER 284:21-22. Shortly following service of the notice, Keys and Hargett put Lot 2 up for sale. ER 284:24-25. That sale was completed in 2006, and Hargett and Keys retained the proceeds from the sale after successfully moving to expunge a lis pendens Van Deusen had placed on Lot 2. ER 284:26-28.

Shortly after Hargett and Keys put Lot 2 on the market, Van Deusen brought suit to quiet title to the Residence Property. ER 285:1-3. Around the same time, Keys apparently brought an unlawful detainer action against his mother, proceedings on which were stayed by the Appellate Division of the Superior Court pending outcome of the quiet title action. During discovery related to the quiet title action, Van Deusen learned that Hargett and Keys had borrowed an additional $200,000 against the Residence Property. ER 285:2-3, 11-13.

In June 2007, trial of the quiet title case took place in the Ventura County Superior Court, and Judgment was entered on December 20, 2007. ER 277-280. The Judgment required Keys to convey title to the Residence Property to Van Deusen. All of the parties were ordered to pay off the debt encumbering the Residence Property, with Hargett and Keys jointly and severally obligated to pay for their combined 2/3 share. ER 278 at ¶ 3. The Judgment also imposed what was termed an "equitable lien" in favor of Van Deusen on the Oxnard Property, the purpose of which was "to secure defendants' obligation to pay two-thirds of the encumberance on the Residence Property." Id. at ¶ 6. The total amount of the encumberance was adjudged to be $533,820.75. Id. at ¶ 7. Van Deusen's lien on the Oxnard Property was established as being in

---

[2] Appellant represents that a determination was made by the trial judge in the underlying case regarding the existence and terms of this supposed implied agreement. Although the record the parties provided to the Court is frustratingly incomplete in this regard, Appellee does not appear to dispute this contention.

the amount of $355,880.49.  Id.  In addition, Hargett and Keys were granted a lien of $177,940.24 on the Residence Property.  Id.  The Judgment provided that, within 30 days of entry of judgment, all of the parties were to open an escrow for the purpose of paying down the entire debt encumbering the Residence Property.  Id. at ¶ 8.  If either side failed to provide the funds necessary to close escrow, the other side could bring a motion for order compelling the sale of either the Oxnard Property or the Residence Property.  Id. at ¶¶ 10,11.

Hargett and Keys failed to provide funds to close escrow, and on April 1, 2008, Van Deusen filed a motion (not included in the appellate record) in Superior Court for an order compelling the sale of the Oxnard Property.  On April 28, 2008, Keys filed his Chapter 7 Petition.  On July 8, 2008, a hearing was held on Keys's motion to avoid the lien encumbering the Oxnard Property,[3] and on July 17, 2008, the bankruptcy court entered an order granting the motion and setting aside Van Deusen's lien in all amounts in excess of $28,000.  ER 303-304. The order does not set out a basis for the Court's decision, other than "the Court['s] having made findings of fact and conclusions of law as set forth in the record."  ER 304; see footnote 3, supra.

---

[3] At the July 8 hearing, the bankruptcy court found, inter alia, (1) that there was no evidence that Keys's and Hargett's use of proceeds from Lot 2 (pursuant to Van Deusen's forbearance from asserting any right to those same proceeds) formed the basis for the lien, and (2) that "it doesn't really matter because this is not a [Farrey v. Sanderfoot] case."  ER 361:8-10.  At the conclusion of the hearing, it stated:

> Under Section 522(f)(1), the Debtor may avoid a lien if three conditions are met, there has to be a fixing of a lien on an interest of the Debtor in the property.  Such lien impairs an exemption to which the debtor would have been entitled, and the lien is a judicial lien.
>
> The evidence before me is that Mr. Keys acquired the Oxnard property, which is his home, in 1998.  There is no evidence before me as to when . . . the Ojai property was conveyed from Ms. Van Deusen to Mr. Keys, although the representations of both parties are that it . . . occurred in 1999.
>
> \*       \*       \*
>
> The Debtor did have an interest in real property in Oxnard in 1998.  There is no lien.  No judicial lien created until at the earliest December of 2007, and more rationally January of 2008 when the judgment was recorded.  It is called an equitable lien.  However, under California law and Ninth Circuit law, an equitable lien created by a judicial process is a judicial lien.  I have no evidence, only argument, that there was any prior event to which an equitable lien could relate - and I have no statutory or case law presented to justify the relation back of any judgment lien to a prior event.  There's no lis pendens in this case.
>
> \*       \*       \*
>
> The issue - the only outstanding issue I think on the law the Debtor prevails.  He has a homestead exemption.

ER 373:7 - 374:25.

Appellant's motion for reconsideration was denied on July 24, 2008.[4] On August 1, 2008, Appellant filed her Notice of Appeal, which eventually made its way to this Court.

## JURISDICTION AND STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. On appeal, a district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Fed. R. Bankr. P. 8013; see also Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral-.com), 504 F.3d 775, 783 (9th Cir. 2007). The test for clear error is whether the reviewing court, based on all of the evidence, has a definite and firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

## ANALYSIS

The initial issue (whether the creation of the judicial lien imposed by the state trial court relates back to Keys' purchase of the Oxnard Property) is essentially a question of law that is reviewed de novo. Appellant argues that Keys cannot avoid the lien under Bankruptcy Code § 522(f)(1) pursuant to the rule articulated in Farrey v. Sanderfoot, 500 U.S. 291 (1991). In Farrey, the Supreme Court observed that § 522(f) does not permit the avoidance of liens generally but, rather, permits the avoidance of "the fixing of a lien on an interest of the debtor." 500 U.S. at 296. Thus, under § 522(f), a debtor may avoid a lien ". . . only where the lien attached to the debtor's interest at some point after the debtor obtained the interest." Id. at 295. Under California law, "[a]lthough an equitable lien is not judicially recognized until a judgment is rendered declaring its existence, the lien relates to the time it was created by the conduct of the parties," Hise v. Superior Court, 21 Cal.2d 614, 627-28 (1943). Here, Appellant argues that the conduct of the parties that created the lien was Keys's purchase of the Oxnard Property, so that the interest in the property and the lien were created simultaneously. Therefore, she argues, the lien may not be avoided. See Appellant's Opening Brief 11:21-25.

That contention is unpersuasive. Appellant has not cited any case (and this Court has not located any decision) in which a bankruptcy court, district court, or the Ninth Circuit has applied the Hise rule in the context of lien avoidance under § 522(f),[5] as opposed to the context of

---

[4] In denying the motion for reconsideration, the bankruptcy court wrote, "After the hearing the court found the declaration of Charlene Van Deusen. However, the content of her testimony was considered by the Court through counsel's argument. It makes no difference in the court's determination that she holds a judicial lien which is properly voidable in large part." ER 333.

[5] In re Stratton, 106 B.R. 188 (Bankr. E.D. Cal. 1989), however, suggests that bankruptcy courts might employ such a rule. There, the bankruptcy court deferred a creditors' objection to the debtors' homestead exemption, writing:

> This court can perceive no reason why the parties should be prevented from litigating the issue of whether Movants are entitled to execute their claim against the Debtors' claimed homestead exemption on the ground that such exemption was created by fraudulent means. Although it is true that Movants' claim was technically discharged on

acknowledging - as in <u>Rollins v. Neilson (In re Cedar Funding, Inc.)</u>, 398 B.R. 346, 350 (Bankr. N.D. Cal. 2008) - the bankruptcy court's own ability to impose an equitable lien.  Even if this Court were to conclude that such a rule were applicable, however, there was no finding of fraud or similar conduct in connection with the purchase of the Oxnard Property to justify a relation back in this instance.  Similarly, there is nothing in the appellate record to compel the conclusion that Van Deusen's forbearance on rents collected from Lot 2 was the basis for the trial court's imposition of the equitable lien.

     A. No Relation Back Rule

     The issue in <u>Farrey</u>, as articulated by the Supreme Court itself, was "whether §522(f) of the Bankruptcy Code allows a debtor to avoid the fixing of a lien on a homestead, where the lien is granted to the debtor's former spouse under a divorce decree that extinguishes all previous interests the parties had in the property, and in no event secures more than the value of the nondebtor spouse's former interest." 500 U.S. at 292.  Appellant has offered no justification for broadening its holding that a debtor who did not possess an interest in property before a lien attached cannot avoid the fixing of a lien on that interest, and <u>Farrey</u>'s rationale for disallowing the avoidance of the lien (<u>i.e.</u>, that allowing avoidance in that situation would not further 522(f)(1)'s purpose of preventing creditors from rushing to court to defeat the protection which bankruptcy law accords exempt property against debts, <u>see</u>  500 U.S. at 297)) is inapplicable here.  The bankruptcy court (relying partly on <u>Law Offices of Moore v. Stoneking (In re Stoneking)</u>, 225 B.R. 690 (B.A.P. 9th Cir. 1998) properly ruled that <u>Farrey</u> did not prevent Keys from avoiding the lien on the Oxnard Property.

     In <u>Stoneking</u>, the B.A.P. was asked to decide whether a debtor could utilize § 522(f)(1) to avoid a judicial lien imposed on the residence while the debtor held a community property interest in the residence, where the residence thereafter becomes debtor's separate property.  The B.A.P. held that, because this was not a situation in which the creditor's judicial lien was imposed simultaneously with the creation of the debtor's fee interest in the residence, <u>Farrey</u> was inapplicable.  Here, similarly, there does not appear to have been any evidence before the bankruptcy court which would compel it to conclude that the lien dated back to Keys's purchase of the Oxnard Property.  Rather, the bankruptcy court reasonably concluded that the lien arose at

---

     April 13, 1989, the allegations made surrounding the transaction, if
     subsequently found to be true by this court or the El Dorado Superior
     Court, would easily lend themselves to the implementation of either a
     constructive trust or an equitable lien which would relate back to the
     time it was found to have been created by the conduct of the parties.
     [Citations]. * * * * [I]n the event this or any other court of competent
     jurisdiction finds ultimately that the homestead consists in whole or in
     part of proceeds obtained by fraud, said exemption would not be exempt
     [sic] from execution under California law (supra), thereby rendering 11
     U.S.C. § 522(f) ineffective for purposes of avoiding the equitable lien
     therein.

<u>In re Stratton</u>, 106 B.R. at 193.

the time the judgment was entered in the state court action.

Appellee correctly observes that three of the five cases from within this circuit cited by Appellant have nothing to do with Farrey or § 522(f)(1). In re Destro, 675 F.2d 1037, 1038 (9th Cir. 1982), dealt with a priority issue under the pre-1978 Bankruptcy Act, and moreover, addressed the problem of whether a creditor was entitled to an equitable lien and not how to treat an existing judicial lien. In Nunez v. Nunez, 196 B.R. 150, 153 n.1 (B.A.P. 9th Cir. 1996), the B.A.P. acknowledged the existence of the Hise rule because the state court had specifically held that the lien was created at the time the appellant made loans to the debtor. (Had the trial court in this case specified a certain date on which the lien was created, Appellant's argument that the lien relates back to some conduct by Appellee might be entitled to more weight). Appellant's contention that the BAP "applied" the Hise rule is erroneous, however, and the facts of that case - which dealt primarily with procedural issues regarding the timing of a hearing on a motion to avoid the homestead exemption - are of no relevance here. Finally, in In re Stratton, 106 B.R. 188 (Bankr. E.D. Cal. 1989), the bankruptcy court wrote that "in the event this or any other court of competent jurisdiction finds ultimately that the homestead consists in whole or in part of proceeds obtained by fraud, said exemption would not be exempt from execution under California law (supra), thereby rendering 11 U.S.C. § 522(f) ineffective for purposes of avoiding the equitable lien therein." Id. at 193. But this language from Stratton is dicta, and here, like in Stratton, the trial court made no finding of fraud in relation to Keys's acquisition of the Oxnard Property.

Of the two cited cases that do address § 522(f)(1), both are distinguishable. Yerrington did not involve the relation back doctrine but, rather, like Farrey, involved the creation of new property interests pursuant to a marital dissolution order entered simultaneously with the lien. Appellant's strongest case (and really the only one that provides any support for her relation back argument) is In re Farnsworth, 384 B.R. 842 (Bankr. D. Ariz. 2008). There, the bankruptcy court stated, as an alternative to its holding that the recording of a lis pendens gave the creditor a superior interest to that of the bankruptcy trustee, that an equitable lien encumbered the debtor's property and was not avoidable under § 522(f)(1). In so finding, the bankruptcy court found that the underlying judgment "recognized the [creditor's] participation interest in the residential purchase which came into being simultaneously with the debtor's ownership interest." Id. at 851. Here, although Van Deusen may well have had an argument in favor of her having such a "participation interest" in Keys's purchase of the Oxnard Property, the trial court simply imposed an equitable lien in order "to secure defendants' obligation to pay 2/3 of the encumberance on [the Residence Property]." This obligation only came into existence when the trial court entered its order, and the lien itself - on the face of the Judgment - only arose upon entry of judgment. As the bankruptcy court observed, no lis pendens was ever recorded in the underlying action.

In her Opposition to Keys's motion before the bankruptcy court to avoid the judgment lien, Van Deusen wrote:

> In the present case, the court imposed the remedy of an equitable
> lien because it was necessary to prevent unjust enrichment, where
> the defendants had used rental funds, particularly post-1997 rental
> funds received from Lot 2, to purchase the Oxnard property and
> service the debt on that property. The defendants had unfettered

> control of the Lot 2 rents because plaintiff, in accordance with the agreement of the parties, forebore from asserting any right to participate in Lot 2 rents. In other words, the defendants purchased and financed the Oxnard property with funds which, in the absence of the parties' implied agreement, would have been partially the property of Ms. Van Deusen.[6]

The problem with this argument is that it reads too much into the underlying order which, again, only indicated that the trial court was imposing an "equitable lien" for the purpose of making sure the parties fulfilled their obligations to pay down the debt encumbering the Residence Property. The bankruptcy court correctly concluded that the lien did not relate back to any prior event.

B. Keys's Interest in the Property Pre-Dates any Conduct That Could Have Given Rise to the Lien.

Even if the Court were to find the Hise rule applicable in this case, and even if the Court were to conclude that the lien imposed by the trial court were the type of "equitable lien" that, under Hise, might have required the bankruptcy court to examine the conduct of the parties to decide when the lien attached to the subject property, the lien would still be avoidable.

Appellant's argument is essentially that, because her agreement to forebear from participating in the rental income from Lot 2 "enhanced [Keys's] financial possession," so as to enable him to purchase the Oxnard Property, the equitable lien arose simultaneously with that purchase. Thus, Appellant asserts, this case is akin to Farnsworth, in which the creditor loaned the debtor $10,000 to buy the homestead and the creditor's lien related back to the time the money was loaned. See 384 B.R. at 846. Appellee puts forth an equally compelling narrative, however, in which Van Deusen obtained an equitable interest not - as in Farnsworth - because she loaned Keys the money to buy the Oxnard Property, but because Keys failed to reconvey the Residence Property back to her (and further encumbered that property) after he acquired his interest in the Oxnard Property.

While the trial court perhaps could have found that Van Deusen acquired some interest in the Oxnard Property based on some supposed misuse of revenue by Keys from other properties (possibly the source of the bankruptcy court's semi-cryptic comment in denying the motion for reconsideration that the lien was "properly voidable in large part"), it never did so explicitly. Based upon the underlying order of the trial court, the bankruptcy court would have had no basis for finding that the lien attached to the Oxnard Property simultaneously with Keys's purchase of it. If it attached at any time thereafter, it would not affect Keys's ability to avoid the lien.

---

[6] To the extent that Van Deusen might rely on the 1997 "implied agreement" between the parties as forming the basis for any supposed participation interest on her part in the Oxnard Property, such reliance would be misplaced because the trial court found that the agreement was to use income from other properties to service debt that had been taken out on the Residence Property. There was no implied agreement giving Van Deusen an interest in the Oxnard Property. If, on the other hand, Van Deusen is simply asking the Court to find that there is an unjust enrichment exception to the lien avoidance rule, the Court would find that there is no such exception. See infra § C.

### C. Unjust Enrichment

Appellant's secondary argument against avoidance of the lien also relies, ostensibly, upon her reading of <u>Farnsworth</u>. Appellant argues that because the trial court imposed an equitable lien in order to prevent unjust enrichment, "[t]he debtor ought not be permitted to undo the equitable result ordered by the superior court by resorting to lien-avoidance rules in bankruptcy." It bears repeating, however, that <u>Farnsworth</u> never dealt directly with the homestead exemption. Even if the trial court had made an express finding of unjust enrichment, there does not appear to be a single case holding that an "unjust enrichment" exception exists to the lien avoidance provisions of § 522(f)(1). "[M]ost case law hold[s] that liens resulting from nondischargeable debts are avoidable under § 522(f) if they impair the debtor's exemption. [Citations]." <u>S & C Home Loans, Inc. v. Farr (In re Farr)</u>, 2002 Bankr. LEXIS 535 (B.A.P. 9th Cir. May 6, 2002).

Appellant contends incorrectly in her Reply that a bankruptcy court must look first to state law and then to federal law to see whether a judgment lienor can execute on a debtor's homestead. (Although the court would look to state law to see when the debtor's interest arose in the property in which the homestead exemption is claimed). State law - at least (seemingly) where a state has not opted out of of the federal exemptions under § 522(f)(3) - is subordinate to federal law in this respect. <u>See, e.g.</u>, <u>Yerrington</u>, 144 B.R. at 98; <u>Hastings v. Holmes (In re Hastings)</u>, 185 B.R. 811, 815 (B.A.P. 9th Cir. 1995) ("Although under California law the debtors' property would not be 'homestead' property as to appellee's pre-existing lien, the debtors owned the property prior to the recording - and the fixing - of the lien, and therefore the lien clearly fixed on 'an interest of the debtor in property.'").

Appellant's citation to <u>In re Stratton</u>, 106 B.R. 188 (Bankr. E.D. Cal. 1989) is, again, uninstructive. In <u>Stratton</u>, the bankruptcy court opined that a finding that the homestead was purchased by fraud might give rise to an equitable lien or a constructive trust that would relate back to the purchase of the home and therefore defeat the homestead exemption "under California law." This hypothetical does not match the facts of this case; the discussion of the law in <u>Stratton</u> is ambiguous; and more fully reasoned cases support the bankruptcy court's conclusion that the lien in this case was a "judicial lien" within the meaning of § 522(f)(1)(A). Moreover, far from being deferential to state law, if the bankruptcy court (or this Court) were to do what Appellant asks, it would mean essentially rewriting the trial court's order to impose a finding that it did not make - <u>i.e.</u>, that the lien relates back to Keys's purchase of the property. This it surely should not do.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the bankruptcy court.


Dated: This _2nd_ day of July, 2010.


GEORGE H. WU
United States District Judge

-8-